UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NUMBERAI INC., | Case No.  25-cv-09636-PHK |
| Plaintiff, | **ORDER GRANTING NUMBERAI, INC.'S *EX PARTE* APPLICATION FOR LEAVE TO SERVE THIRD-PARTY SUBPOENAS** |
| v. | |
| JOHN DOE, | Re: Dkt. 9 |
| Defendant. | |

Now before the Court is Plaintiff NumberAI, Inc.'s ("NumberAI") *Ex Parte* Application for Leave to Serve Third-Party Subpoenas Prior to a Rule 26(f) Conference.  [Dkt. 9].  Because Defendant John Doe, subscriber assigned IP address number 199.230.10.107, ("Defendant Doe") has not been identified or served with the Complaint yet, no opposition has been filed.  Having reviewed Number AI's application and all supporting documents, the Court **GRANTS** the *ex parte* application.

## BACKGROUND

NumberAI alleges that it has developed a "highly effective and specialized" AI agent for use by car dealerships to automate handling customer calls and inquiries, which Plaintiff classifies as a company trade secret.  *See* Dkt. 1 at ¶¶ 2-7.  NumberAI indicates it is a Delaware corporation with its headquarters in Oakland, CA.  *Id.* at ¶ 25.

Defendant Doe is accused of fraudulently obtaining a "secure, protected, and private" demonstration of Plaintiff's artificial intelligence ("AI") agent referred to as "Numa."  *Id.* at ¶ 1. NumberAI allegedly sells this AI agent to car dealerships throughout the country to "assist in booking repair appointments, tracking the status of customer inquiries, and generally to automate

time-consuming, administrative tasks." *Id.* at ¶ 3. NumberAI allegedly offers a "secure, private, and live demonstration" of Numa to dealerships interested in testing or purchasing the Numa Service. *Id.* at ¶ 5. To access this demonstration, a dealership representative must provide NumberAI with verification that they are an employee of a car dealership. *Id.*

NumberAI alleges that Defendant Doe contacted NumberAI using an email address ending in the domain name "@northsideautogreenville.com" that appeared associated with a real car dealership, "Northside Auto Greenville," in South Carolina. *Id.* at ¶ 9. Defendant also allegedly provided NumberAI with a phone number, (864) 528-6080, which appeared to be associated with "Northside Auto Greenville." *Id.* at ¶ 10.

Defendant Doe, allegedly identifying himself to NumberAI as "Kevin Yan," claimed to be based in South Carolina as an "Operations" employee at the dealership. *Id.* at ¶ 11. NumberAI alleges that, based on Defendant Doe's claimed association with the car dealership, it provided Defendant Doe with a secure demonstration of Numa "on or around August 21, 2024," and gave Defendant Doe "confidential contact information of other Numa Service customers to serve as references." *Id.* at ¶¶ 13-15.

When NumberAI subsequently attempted to contact Defendant Doe after providing access to Numa, NumberAI found that the email and phone number provided by Defendant Doe had been abandoned. *Id.* at ¶ 16. Upon contacting "Northside Auto Greenville" directly, the dealership allegedly informed NumberAI that no one by the name "Kevin Yan" had ever worked there and confirmed that the email and phone number that Defendant provided were not associated with that dealership. *Id.* at ¶ 17. NumberAI alleges that, upon information and belief, Defendant Doe gained unauthorized access to the dealership's information technology systems to fabricate an email address domain. *Id.* at ¶ 18. NumberAI further alleges that, upon information and belief, Defendant Doe is an employee or agent of a NumberAI competitor and used the live demonstration to gather "competitive intelligence and trade secrets associated with the Numa Service." *Id.* at ¶ 19.

Defendant Doe was named in the Complaint solely in connection with a specific Internet Protocol ("IP") address and the abandoned phone number. *Id.* at ¶ 1. "An IP address is a 'unique numerical address' assigned to every computer and can serve as its identifying characteristic."

2

United States District Court
Northern District of California

*United States v. Henderson*, 906 F.3d 1109, 1111 n.1 (9th Cir. 2018).  An IP address is not a physical address but instead is a unique identifier for every computer or server connected to the Internet. *United States v. Forrester*, 512 F.3d 500, 510 n.5 (9th Cir. 2008).  As is well-known, consumers and households connect their home computers and other devices to the Internet by subscribing to a service through a vendor called an internet service provider ("ISP"), often a cable company, telecommunications company, or other similar service provider.  *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 974 (2005) ("The traditional means by which consumers in the United States access the network of interconnected computers that make up the Internet is through 'dial-up' connections provided over local telephone facilities.  Using these connections, consumers access the Internet by making calls with computer modems through the telephone wires owned by local phone companies. Internet service providers (ISPs), in turn, link those calls to the Internet network, not only by providing a physical connection, but also by offering consumers the ability to translate raw Internet data into information they may both view on their personal computers and transmit to other computers connected to the Internet.") (citations omitted).

When a subscriber (or consumer) signs up for Internet service, the ISP assigns an IP address to that subscriber – essentially renting out the IP address to the consumer for the duration of their subscription service period.  *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 575 (N.D. Cal. 1999) ("On the Internet, computers find each other by reference to Internet Protocol (IP) addresses, which are a series of numbers that are used to specify the address of a particular machine connected to the Internet.  Domain names are alphanumeric strings that are associated with particular IP addresses.  Thus to find the computer at 129.99.135.66, a user might type in uscourts.gov, and would never need to know the actual IP address.").  The consumer does not own the IP address – it is controlled by the ISP and designated to subscribers as they sign up for service.  *UMG Recordings, Inc. v. Doe*, No. 08-cv-1193-SBA, 2008 WL 4104214, at *2 (N.D. Cal. Sept. 3, 2008) ("[W]hen an ISP is given a defendant's IP address and the date and time of infringement, it quickly and easily can identify the name and address of a Doe defendant, i.e., the ISP's subscriber, because that information is contained in the ISP's subscriber activity log files.") (citations omitted).  Because the

ISP sends monthly or regular bills to the subscriber and has the original service application documents from each subscriber, and because the ISP knows which of its IP addresses were assigned to which customers, it follows that an ISP's internal records should typically include information sufficient to link a customer with the account corresponding to a particular IP address. *Id.*

Here, NumberAI avers that it traced the IP address used by Defendant Doe's device to a physical address in the Northern District of California first by identifying the IP address based on "software handling customer inquiries for the Numa demonstration." [Dkt. 9-1 at ¶ 3; Dkt. 1 at ¶ 22]. NumberAI also avers that Plaintiff's unidentified "online marketing partner that processed Defendant's request for the Numa Service demo provided the IP address associated with Defendant which traced to a physical address either in San Francisco or Cupertino, CA, both of which are located in this District." [Dkt. 1 at ¶ 23; Dkt. 9-2 at 7]. After identifying the IP address, NumberAI avers that internet research identified an ISP, Another Corporate ISP, LLC (allegedly doing business as "Monkey Brains"), as the ISP which provided ISP service to this IP address. [Dkt. 9-1 at ¶ 7]. That ISP is based in San Francisco, and the identified IP address is also allegedly located in San Francisco or Cupertino. [Dkt. 9-1 at ¶ 7; Dkt. 9-2]. Based on this investigation, NumberAI believes that Defendant Doe is the subscriber using assigned IP address 199.230.10.107. [Dkt. 9-1 at ¶ 3, Dkt. 9-2 at 3]. NumberAI seeks Court authorization to serve limited, immediate discovery on Defendant's ISP in order to seek information on Defendant's identity, further investigate Defendant's role in the fraud, and effectuate service of the Complaint. [Dkt. 9 at 4].

Additionally, NumberAI avers that internet research identified Twilio International, Inc. ("Twilio") as the telecommunications service provider for the phone number which Defendant Doe provided to NumberAI. [Dkt. 9-1 at ¶ 9; Dkt. 9-3 at 2]. Because Defendant Doe provided the phone number to NumberAI, NumberAI believes that Defendant Doe communicated with Twilio to set up telephone service for that phone number. NumberAI seeks to serve the same, limited discovery requests on Twilio because NumberAI asserts, based on its investigation, that the phone number Defendant provided to Number AI is registered with Twilio. [Dkt. 9 at 4].

Based on these allegations, on November 12, 2025, NumberAI filed the Complaint in this action against Defendant Doe alleging trade secret misappropriation under 18 U.S.C. § 1836, as well

4

as fraud under California Civil Codes §§ 1709 and 1710. *See* Dkt. 1 at 6-7. NumberAI seeks various forms of compensatory, equitable, and injunctive relief, including compensation for "damages in excess of $100,000 due to the potentially substantial monetary harm that Defendant has caused by providing competitive intelligence and trade secrets to one or more of NumberAI's competitors." *Id.* at ¶ 20.

On December 23, 2025, NumberAI filed the instant *ex parte* application requesting leave to serve Defendant Doe's ISP with a subpoena under Fed. R. Civ. P. 45. [Dkt. 9]. NumberAI alleges that Defendant Doe's ISP has the ability to identify Defendant Doe through the IP address discovered by the investigation discussed herein. *Id.* at 3. NumberAI seeks to serve the same discovery on Twilio, based on a determination that the phone number Defendant Doe provided to NumberAI is registered with Twilio. *Id.* at 4. NumberAI represents that the requested subpoenas will be limited to seeking the name and physical address of the individual having the account associated with Defendant Doe's IP address of 199.230.10.107 and the phone number provided to NumberAI. *Id.*

### DISCUSSION

**I.    LEAVE TO SERVE EARLY, LIMITED SUBPOENAS ON THE THIRD-PARTIES ANOTHER CORPORATE ISP AND TWILIO.**

Pursuant to Rule 26(d)(1), a party may not seek discovery from any source prior to the parties' conference required by Rule 26(f). However, per Rule 26(d)(1), the Court has authority to allow discovery prior to the Rule 26(f) conference and thus outside this timing limitation. *See also* Fed. R. Civ. P. 26 advisory committee's note (1993) ("Discovery can begin earlier if authorized . . . by local rule, order, or stipulation. This will be appropriate in some cases[.]"). The Court may authorize early discovery before the Rule 26(f) conference if the requesting party establishes "good cause" for the early discovery. *Semitool, Inc. v. Tokyo Electron Am. Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs prejudice to the responding party." *Id*.

As with all discovery matters, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S.

574, 598 (1998). "And the court may also set the timing and sequence of discovery." *Id.* at 599 (citing Fed. R. Civ. P. 26(d)). Thus, the decision whether or not to grant early discovery under Rule 26(d) is within the Court's discretion. *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1015 (9th Cir. 2010) ("We review district court rulings on discovery matters for abuse of discretion."). Further, a decision to deny early discovery under Rule 26(d) "will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Med Vets, Inc. v. VIP Petcare Holdings, Inc.*, 811 F. App'x 422, 424 (9th Cir. 2020) (quoting *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

In evaluating a motion for expedited discovery, the District Court in *Med Vets* considered the following factors to determine whether good cause exists to justify the requested early discovery: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made. *Med Vets, Inc. v. VIP Petcare Holdings, Inc.*, No. 18-cv-02054-MMC, [Dkt. 45] at *3 (N.D. Cal. Nov. 28, 2018) (quoting *Rovio Ent. Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 1086, 1099 (N.D. Cal. 2012)). The Ninth Circuit affirmed the District Court's decision on the request for expedited discovery in that case. *Med Vets*, 811 F. App'x at 424.

A request for early discovery, such as the instant *ex parte* application, may arise particularly in a case involving alleged wrongful conduct in connection with use of the internet. As discussed by precedent:

> With the rise of the Internet has come the ability to commit certain tortious acts, such as defamation, copyright infringement, and trademark infringement, entirely on-line. The tortfeasor can act pseudonymously or anonymously and may give fictitious or incomplete identifying information. Parties who have been injured by these acts are likely to find themselves chasing the tortfeasor from Internet Service Provider (ISP) to ISP, with little or no hope of actually discovering the identity of the tortfeasor.
>
> In such cases the traditional reluctance for permitting filings against John Doe defendants or fictitious names and the traditional enforcement of strict compliance with service requirements should be tempered by the need to provide injured parties with an (sic) forum in which they may seek redress for grievances. However, this need must be balanced against the legitimate and valuable right to participate in

6

online forums anonymously or pseudonymously. People are permitted to interact pseudonymously and anonymously with each other so long as those acts are not in violation of the law. This ability to speak one's mind without the burden of the other party knowing all the facts about one's identity can foster open communication and robust debate. Furthermore, it permits persons to obtain information relevant to a sensitive or intimate condition without fear of embarrassment. People who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity.

Thus some limiting principals should apply to the determination of whether discovery to uncover the identity of a defendant is warranted.

*Columbia Ins.*, 185 F.R.D. at 578 (footnote omitted).

*Columbia* thus identified four factors to assist in determining whether a plaintiff has established good cause to conduct early discovery to identify Doe Defendants.  Courts look to "whether the plaintiff (1) identifies the Doe defendant with sufficient specificity that the court can determine that the defendant is a real person who can be sued in federal court, (2) recounts the steps taken to locate and identify the defendant, (3) demonstrates that the action can withstand a motion to dismiss, and (4) proves that the discovery is likely to lead to identifying information that will permit service of process." *Zoosk Inc. v. Doe 1*, No. C 10-04545 LB, 2010 WL 5115670, at *2 (N.D. Cal. Dec. 9, 2010) (citing *Columbia Ins.*, 185 F.R.D. at 578–80).  Additionally, the Ninth Circuit has relied on the first and third factors as weighing in favor of granting early discovery to determine an unknown defendant's identity.  *See, e.g., Young v. Transp. Deputy Sheriff I*, 340 F. App'x 368, 369 (9th Cir. 2009); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).

Applying the *Columbia* factors here, the Court finds that all four factors weigh in favor of the requested limited early discovery.  First, NumberAI sufficiently alleges enough details to enable this Court to establish that Defendant Doe is more than likely an actual individual who can be legally sued in federal court.  "A plaintiff may show that a defendant is a real person or entity by providing evidence of 'specific acts of misconduct that could only have been perpetrated by actual people, as opposed to a mechanical process.'" *Distinct Media Ltd. v. Doe Defendants 1-50*, No. 15-cv-03312 NC, 2015 WL 13389609, at *2 (N.D. Cal. Sept. 29, 2015) (citation omitted).  Here, according to

United States District Court
Northern District of California

United States District Court
Northern District of California

NumberAI, "[t]he process by which Defendant gained access to the Numa demonstration cannot take place without human interaction." [Dkt. 9 at 9]. NumberAI alleges that Defendant Doe provided NumberAI with a "fake name, phone number, and email address carefully constructed to reflect association with a genuine car dealership" that could not result from a "default or automatic process." *Id.*

Additionally, NumberAI allegedly traced Defendant Doe's IP address to a location within this Court's jurisdiction. *Id.* "[A] plaintiff identifies Doe defendants with sufficient specificity by providing the unique IP addresses assigned to an individual defendant . . . and by using 'geolocation technology' to trace the IP address to a physical point of origin." *Malibu Media, LLC v. Doe*, No. 16CV1916-GPC(JMA), 2016 WL 6216183, at *2 (S.D. Cal. Oct. 25, 2016) (citation omitted) (alteration in original). Here, NumberAI alleges to have traced Defendant Doe's IP address to "a geographic location, San Francisco, CA, which is within this Court's personal jurisdiction." [Dkt. 9 at 9]. Despite this argument, the actual evidence provided by NumberAI is somewhat equivocal on whether the IP address is linked to a physical location in San Francisco or in Cupertino, CA. *See* Dkt. 9-2 at 7. However, both San Francisco and Cupertino are within the geographic borders of the Northern District of California. Accordingly, NumberAI has provided evidence that the Defendant in this case is an actual person and correlated their IP address to a location within this Court's jurisdiction. These allegations strongly suggest Defendant Doe is an identifiable person, a subscriber of the IP address identified by NumberAI, and thus a natural person who can be legally sued in federal court.

Second, NumberAI provides an account of the steps taken in its attempts to locate and identify Defendant Doe. *See Malibu Media, LLC v. Doe*, No. 16CV1908-BAS(JMA), 2016 WL 6216180, at *2 (S.D. Cal. Oct. 25, 2016) ("Plaintiff must identify all previous steps taken to identify the Doe Defendant in a good faith effort to locate and serve it."). NumberAI alleges Defendant Doe accessed Numa using a particular IP address. NumberAI attests that NumberAI obtained this IP address based on "software handling customer inquiries for the Numa demonstration." [Dkt. 9-1 at ¶ 3]. NumberAI also avers that Plaintiff's unidentified "online marketing partner that processed Defendant's request for the Numa Service demo provided the IP address associated with Defendant

which traced to a physical address either in San Francisco or Cupertino, CA, both of which are located in this district." [Dkt. 1 at ¶ 23; Dkt. 9-2 at 7]. After identifying the IP address, NumberAI submits evidence of performing internet research to identify the ISP ("Another Corporate ISP, LLC" d/b/a "Monkey Brains") which provided ISP service to this IP address. [Dkt. 9-1 at ¶ 7; Dkt. 9-2 at 2]. And as discussed above, NumberAI provides evidence of its internet research to determine that this IP address was traced back to locations within the Northern District of California. [Dkt. 9-2 at 7; Dkt. 9 at 9].

NumberAI admits that knowing Defendant Doe's IP address by itself is not enough to establish Defendant Doe's identity. [Dkt. 9-1 at ¶ 6 ("My search included looking up the IP address on general search engines like 'google.com', 'bing.com', and 'duckduckgo.com'. I also used specialized IP address searching tools available on sites such as 'NordVPN.com', 'DNSChecker.org', and 'BigDataCloud.com'. None of these searches provided information as to Defendant's identity.")].

With regard to the phone number at issue, as discussed above, NumberAI presents evidence of its internet research to determine that the telecommunications service provider for the phone number used by Defendant Doe was Twilio. [Dkt. 9-1 at ¶ 9; Dkt. 9-3 at 2]. NumberAI's counsel avers to having used multiple methods to attempt to obtain Defendant Doe's identity from the phone number, including "looking up the phone number on general search engines," using a "specialized tool for searching phone numbers," and reviewing "federal and state regulatory sites, publicly available guides regarding IP address and phone number information, and relevant case law to determine if other means of obtaining Defendant's identity were available." [Dkt. 9-1 at ¶¶ 8-10.].

The Court finds that NumberAI's efforts are sufficient to satisfy this factor. *See Strike 3 Holdings LLC v. Doe*, No. 18-CV-06938-WHO, 2019 WL 402358, at *2 (N.D. Cal. Jan. 31, 2019) (finding plaintiff's efforts sufficient, including web searches of the IP addresses, references to other sources of authority, and a declaration from an IT expert stating that the service provider was the only entity with the ability to identify the defendant).

Third, NumberAI's Complaint could withstand a motion to dismiss because the Court concludes that, for purposes of this *ex parte* application, NumberAI sufficiently pleads trade secret

United States District Court
Northern District of California

misappropriation under 18 U.S.C. § 1836. First, the complaint underlying an application for early discovery must be able to withstand a motion to dismiss to "prevent abuse of this extraordinary application of the discovery process and to ensure that plaintiff has standing to pursue an action against defendant." *Columbia Ins.*, 185 F.R.D. at 579–80. Next, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Here, NumberAI alleges that it possesses a trade secret namely "Numa's specific capabilities crafted for car dealerships." [Dkt. 9 at 6]. In its Complaint, NumberAI alleges that it "has invested significant time and capital in developing, marketing, and maintaining Numa as a premiere AI tool for car dealerships[.]" [Dkt. 1 at ¶ 4]. NumberAI alleges that its "secure, private, and live demonstration of Numa" is not offered to any member of the public since it "contains protected, sensitive information regarding Numa's capabilities . . . that would be valuable to others seeking to create a competing AI service." *Id.* at ¶¶ 5-6. NumberAI alleges that Defendant Doe "[p]rovid[ed] a fake name, phone number, email address, and employer information to gain secure access to [Numa.]" [Dkt. 9 at 7]. Without passing judgement on the ultimate merits of this case, the Court finds that at this stage NumberAI's Complaint could withstand a motion to dismiss because it has established a *prima facie* case of trade secret misappropriation and "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678.

Finally, NumberAI has established that the requested, limited early discovery is likely to lead to identifying information which will likely reveal the identity of Defendant Doe. In order to establish this factor, a Plaintiff must "provide enough concrete details about who these individuals are or how they eventually could be identified, located, and served." *Biesenbach v. Does 1–3*, No. 21-cv-08091-DMR, 2022 WL 17371156, at *4 (N.D. Cal. July 18, 2022). NumberAI alleges that Defendant Doe's ISP and Twilio have information which would identify Defendant Doe. [Dkt. 9 at 3-4]. Defendant Doe's ISP allegedly has in its possession the subscriber's name and physical address, since some natural person signed up for and was paying that ISP for the internet service associated with the IP address at issue here. Similarly, Twilio is allegedly "the only entity that

United States District Court
Northern District of California

maintains records regarding who created and/or registered the now abandoned phone number that Defendant provided." *Id.* at 7-8.

NumberAI's counsel attests that NumberAI is unable to ascertain Defendant Doe's identity by other means. [Dkt. 9-1 at ¶ 10 (". . . I reviewed federal and state regulatory sites, publicly available guides regarding IP address and phone number information, and relevant case law to determine if other means of obtaining Defendant's identity were available. I did not find alternative means beyond the instant request to serve subpoenas.")]. NumberAI claims Defendant Doe's ISP and Twilio are in a position to provide this limited information in response to the requested early subpoenas, and NumberAI argues that, after receipt of such, it will be able to identify Defendant Doe and ultimately serve process. [Dkt. 9 at 12]. "Even if the subscriber is not the proper defendant, learning his or her identity may allow [a plaintiff] to work with the subscriber to locate that individual." *Strike 3 Holdings*, 2019 WL 402358, at *3. Accordingly, the Court finds that NumberAI has made a sufficient showing to satisfy this factor.

Applying the good cause factors identified by the District Court in *Med Vets* leads to the same result. *Med Vets*, No. 18-cv-02054-MMC, [Dkt. 45] at *3, *aff'd Med Vets*, 811 F. App'x at 424. First, while a preliminary injunction is not pending, here the requested early discovery is needed to allow the case to proceed against an unidentified defendant. *See Assef v. Does 1–10*, No. 15-cv-01960-MEJ, 2015 WL 3430241, at *2 (N.D. Cal. May 28, 2015) ("Postponing disclosure of information until the normal course of discovery is not an option in the instant case because, without disclosure of Defendants' names and contact information, the litigation cannot proceed to that stage.") (citation omitted); *see also BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 299 (4th Cir. 2018) ("[O]nly the ISP can match the IP address to the subscriber's identity.").

Second, NumberAI represents to the Court that the breadth of the proposed discovery requests are limited and narrow: the proposed subpoenas will only seek from Defendant Doe's ISP the name and physical address of the natural person who is the subscriber for the IP address at issue and from Twilio the name and physical address of the natural person who was the subscriber for the phone number at issue. *See Dallas Buyers Club LLC v. Doe-69.181.52.57*, No. 16-cv-01164-JSC,

United States District Court
Northern District of California

11

2016 WL 4259116, at *3 (N.D. Cal. Aug. 12, 2016) ("[T]here is no prejudice to the Doe Defendant in granting the requested early discovery because it is narrowly tailored to seek only their identity.") (internal quotations and citation omitted).

Further, the purpose for requesting the expedited discovery is discussed above: NumberAI alleges it needs the discovery to identify the natural person who is Defendant Doe and thus to allow this case to go forward. NumberAI alleges that Defendant Doe's ISP could destroy user logs identifying Defendant Doe without expedited discovery. [Dkt. 9 at 8]. *See UMG Recordings, Inc. v. Does 1-4*, No. 06-0652 SBA (EMC), 2006 WL 1343597, at *1 ("[E]xpedited discovery is appropriate because ISPs typically retain user activity logs for a limited period, ranging from as short as a few days to a few months, before erasing data."). The burden on the target of the discovery to comply with the requests appears cabined by NumberAI's commitment to seek only limited discovery from Defendant Doe's ISP and Twilio, as opposed to conducting free-ranging discovery to try to identify Defendant Doe. NumberAI's request is presented at the outset of this case and thus far in advance of the typical discovery process, but this is a necessity since NumberAI alleges it needs to identify Defendant Doe in order to pursue the case beyond this filing stage. In sum, in light of the District Court *Med Vets* factors, the Court finds that NumberAI has demonstrated good cause warranting the requested early and limited discovery.

In light of the facts and evidence presented to the Court and applying these facts to the legal standards for early discovery, the Court finds that NumberAI has demonstrated good cause warranting the requested early limited discovery (specifically, the proposed subpoenas to Defendant Doe's ISP and Twilio for only the name and physical address of the subscriber) to determine the identity of Defendant Doe. Here, in consideration of the administration of justice, the need for the requested discovery (to identify the defendant and allow the case to go forward) outweighs the prejudice to Defendant Doe's ISP and Twilio (the targets of the requested discovery) in light of the limited and narrow nature of the requested subpoenas. *Semitool*, 208 F.R.D. at 276.

Indeed, NumberAI's claims are supported by evidence of investigation resulting in an alleged instance of trade secret misappropriation linked to the identified IP address and phone number. *Cf. id.* ("It should be noted that courts have recognized that good cause is frequently found

12

United States District Court
Northern District of California

in cases involving claims of infringement and unfair competition."). Therefore, the Court **GRANTS** leave to serve the limited proposed third-party subpoenas on Defendant Doe's ISP and Twilio prior to the Rule 26(f) conference in this matter.

### CONCLUSION

Pursuant to the discussion herein, the Court **GRANTS** NumberAI's *ex parte* application for leave to serve limited early third-party subpoenas to Defendant Doe's ISP and Twilio seeking only the specific information described herein.

This **RESOLVES** Dkt. 9.

**IT IS SO ORDERED.**

Dated: May 14, 2026

PETER H. KANG
United States Magistrate Judge

13